Dorothy FLETCHER, Susan Griffith, and Kerri Bonnette, Appellants,

v.

MINNESOTA MINING AND MANUFACTURING COMPANY, Appellee.

Nos. 01–99–00720–CV, 01–99–00721–CV, 01–99–00803–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 28, 2001.

Sharon S. McCally, Moore & McCally, P.C., Houston, for Appellants.

Joe W. Redden, Jr., Beck, Redden & Secrest, L.L.P., Houston, David Philip Herrick, Herrick & Associates, P.C., Dallas, David M. Gunn, Hogan Dubose & Townsend, L.L.P., Houston, for Appellee.

Panel consists of Justices MIRABAL, TAFT, and DUGGAN.*

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

TAFT, Justice.

These appeals involve suits consolidated for trial against Minnesota Mining and Manufacturing Company (3M), as manufacturer of silicon breast implants. The jury found 3M not liable. Appellants, Dorothy Fletcher, Susan Griffith, and Kerri Bonnette, claim the trial court impliedly directed a verdict against 3M and challenge that ruling. They also challenge the exclusion of one of their expert witnesses. We affirm.

### Facts and Procedural History

In the early 1980's, appellants purchased 3M silicon breast implants through their physicians. Griffith's implants were removed after an MRI revealed a rupture in the implant. Bonnette's and Fletcher's implants were removed after health concerns developed. Appellants claimed they were "downstream consumers" of the implant products [1] and that 3M lied to their physicians about the safety of these products. Appellants sought damages relating to removal of the implants. The trial court submitted the case against 3M to the jury under five theories of liability: design defect, marketing defect, fraud, misrepresentation, and negligence. The trial court rendered a take-nothing judgment on the jury's finding 3M not liable.

### DTPA: Refused Jury Charge Does Not Imply Directed Verdict

■ In their first issue, appellants claim the trial court erred by directing a verdict in favor of 3M on their DTPA causes of action. Following oral argument, appellants filed a supplemental brief to clarify

that, while they acknowledge that the trial court denied 3M's motion for directed verdict on their DTPA claims at the close of the evidence, they claim the trial court implicitly directed a verdict on those claims because it refused to submit appellants' proposed DTPA question to the jury.[2]

Appellants rely solely on rule 33.1(a)(2)(A) of the Rules of Appellate Procedure, which recognizes error preserved by implication. TEX.R.APP. P. 33.1(a)(2)(A). In defending their contention that the trial court implicitly directed verdict on DTPA, appellants emphasize that when 3M moved for directed verdict on the DTPA claims, 3M contended only that *Amstadt* did not apply to appellants and did not argue the evidence was legally insufficient to support a DTPA recovery. Appellants also emphasize that when the trial court denied 3M's motion for directed verdict, the court stated, "Okay. I just need to reread US Brass [sic], so for right now the motion for directed verdict is denied on DTPA." From these factors, appellants surmise that when the trial court refused appellants' proffered, en masse request of 14 questions, which included a DTPA question, the court implicitly, but necessarily (1) reconsidered its prior ruling denying 3M's motion for directed verdict; (2) vacated that ruling; and (3) granted a directed verdict in favor of 3M on appellants' DTPA claims.

■ When a trial court refuses to direct a verdict on a theory of liability and the plaintiff asks to submit that theory to the jury, the only possible inference is that the plaintiff considered the theory viable.

---

**1.** See generally *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644 (Tex.1996).

**2.** Appellants proposed 14 jury questions. Question No. 8 asked whether 3M engaged in

any false, misleading, or deceptive act or practice that was a producing cause of injury to appellants.

A viable theory precludes a directed verdict on that theory. Appellants are estopped to contend otherwise.

Likewise, despite the trial court's announced intent to "reread" *Amstadt v. United States Brass* after denying 3M's motion for directed verdict, nothing in the record compels the conclusion that the trial court refused to submit DTPA recovery to the jury solely because of *Amstadt*. Compare *Salinas v. Rafati*, 948 S.W.2d 286, 288 (Tex.1997) (granting motion to disregard jury findings "automatically" denied conflicting motion for judgment on same findings and motions to amend and conform pleadings to verdict). We reject appellants' attempt to recast their denied charge, which they have not challenged on appeal, as an implied ruling granting 3M's motion for directed verdict, when that implied ruling would contradict the trial court's express ruling denying that same motion.

We overrule appellants' first issue.

### Exclusion of Expert Testimony

■ In their second issue, appellants contend the trial court erred by granting 3M's pre-trial motion to exclude their expert, Dr. Pierre Blais.

#### A. Procedural Background

In moving to exclude Blais, 3M argued his opinion testimony was unreliable.[3] In excluding Blais, the trial court stated, "Blais is struck in his entirety." Following this ruling, the following exchange occurred:

---

3. *See generally Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex.1997) (authorizing parties to challenge and exclude scientific opinion testimony on the grounds that it is unreliable and, therefore, "no evidence"); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998) (requiring party challenging reliability of expert opinion testimony to object to that evidence either before trial or

APPELLANTS' COUNSEL: Your Honor, in order to do what I was trained to do in law school, I probably need to request the Court at least at some time that we really develop the Blais scenario.

. . . .

THE COURT: Right. For you to preserve it.

. . . .

APPELLANTS' COUNSEL: .... I want to suggest that we will do a proffer that the Court will accept as a proffer rather than having to bring Blais down here and going through what you would normally do.

THE COURT: That's fine, and you can probably just offer the whole deposition as your proffer.[4]

The trial court excluded Blais's testimony on January 22, 1999, submitted the case to the jury on February 8, 1999, and signed the final judgment on March 8, 1999. Appellants perfected their appeal on June 15, 1999. Thirty days later, appellants filed documents they designated "formal" bills of exception. While the express purpose of the bills was to include Blais's deposition testimony in the record for appeal, the bills consist of only two pages. The record on appeal, as supplemented through the Fourth Supplemental Clerk's Record, indicates no attachments to these bills. Despite the stated purpose to include Blais's deposition testimony, this omitted testimony was not presented to the trial court with the bills. On July 30,

---

when the evidence is offered, so that offering party has opportunity to cure any defect that may exist).

4. Appellants contend the trial court did not permit a formal bill of exception at this juncture, but the record does not support this claim.

1999, appellant Griffith filed a "first amended" bill of exception. This, too, did not have Blais's deposition testimony attached.[5] The trial court lost plenary power over the judgment on July 16, 1999. *See* Tex.R. Civ. P. 329b(d), (e).

Three months later, on October 15, 1999, all three appellants filed "second amended" bills of exception. Blais's deposition testimony was attached to each of these bills, and each incorporated 3M's contention that appellants' failure to proffer the deposition during trial precluded their incorporating that evidence in the record on appeal by formal bill. On November 3, 1999, the trial court signed documents entitled "Second Amended Formal Bill of Exception," submitted by Bonnette and Fletcher.[6] Each "Second Amended Formal Bill of Exception" states only that the bill was granted "to include Dr. Blais' [sic] deposition, with attachments, in the reporter's record."[7] The bills do not state that the trial court considered the deposition testimony before submitting the case to the jury.

**B. No Error Preserved**

 Texas recognizes two types of offers to preserve error: the offer of proof (formerly referred to as an informal bill of exception) and the formal bill of exception. *See* Tex.R. Evid. 103(a), (b); Tex.R.App. P. 33.2; *4M Linen & Uniform Supply Co. v. W.P. Ballard & Co.*, 793 S.W.2d 320, 323 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (construing former Tex.R.App. P. 52(b) and (c)).[8] To challenge exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof. *Wade v. Commission for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Appellants contend the trial court erroneously excluded their expert. Therefore, rule 103 of the Rules of Evidence controls our analysis. *See id.*

Rule 103 provides as follows:

**(a) Effect of Erroneous Ruling.** Error <u>may not be predicated</u> upon a ruling which admits or excludes evidence <u>unless</u> a substantial right of a party is affected, <u>and</u>

. . . .

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was

---

**5.** The record does not contain a "first amended" bill of exception for appellants Fletcher and Bonnette.

**6.** An additional "Second Amended Formal Bill of Exception," submitted by Griffith, has no signature, although the date, "November 3, 1999," appears on the signature line, in what is apparently the handwriting of the trial judge.

**7.** On February 28, 2001, as authorized by rule 6.6 of the Rules of Appellate Procedure, the parties entered into a stipulation, which has been filed with this Court, regarding the Fourth Supplemental Clerk's Record filed on November 13, 2000:

The parties agree that pages 000466 and 00007 and 00008; and 000950A and 000950B of the Fourth Supplemental Rec-

ord as they currently exist and as they are reflected in exhibits D, E, and F to the appellee's supplemental brief, are correctly included in the certified clerk's record on file with this Court. The parties also agree that said supplemental record will be considered as having been filed in all three of the cases before this Court on appeal.

**8.** Rule 33 of the Rules of Appellate Procedure derives from former rule 52. Tex.R.App. P. 33 (Comment to 1997 change). Rule 33 omitted, as unnecessary, the provisions of former rule 52(b) regarding the offer of proof, which is governed by rule 103 of the Rules of Evidence. Tex.R.App. P. 33 (Comment to 1997 change).

apparent from the context within which questions were asked.

**(b) Record of Offer and Ruling.** The offering party <u>shall</u>, as soon as practicable, <u>but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof</u>. . . .

Tex.R. Evid. 103(a)(2)-(b) (Underscored emphasis added).

■ An offer of proof preserves error for appeal if (1) it is made before the court, the court reporter, and opposing counsel, outside the presence of the jury; (2) it is preserved in the reporter's record; and (3) it is made before the charge is read to the jury. *4M Linen & Uniform Supply Co.*, 793 S.W.2d at 323 (construing requirements of offer of proof under former rule 52(b) of the Rules of Appellate Procedure).[9] Appellants did not submit Dr. Blais's deposition testimony by offer of proof before the court's charge was read to the jury.

**1. No Refusal to Permit Offer of Proof**

■ Refusal to permit an offer of proof is reversible error on a showing of harm. *See 4M Linen & Uniform Supply Co.*, 793 S.W.2d at 324 ("The rule is mandatory."). As addressed above, the record does not support appellants' claim that the trial court did not permit their offer of proof.

**2. No "Limited" Offer**

Appellants also suggest, by supplemental, post-argument briefing, that they preserved error by making a "limited offer" of Dr. Blais's testimony. Appellants rely on a pretrial discussion with the trial court that preceded the discussion excerpted above, which occurred after the trial court ruled Dr. Blais could not testify. Appellants contend this "limited offer" was suffi-

cient to demonstrate Dr. Blais's qualifications to testify that appellants' implants had failed.

Rule 33 of the Rules of Appellate Procedure governs preservation of error. Rule 33.1(a)(1)(A)–(B) states as follows:

**33.1 Preservation; How Shown**

(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, <u>unless the specific grounds were apparent from the context</u>; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

. . . .

Tex.R.App. P. 33.1(a)(1)(A)–(B) (underscored emphasis added); *see also* Tex.R. Evid. 103(a)(2) ("In case the ruling is one excluding evidence, the *substance of the evidence* was made known to the court by offer, *or was apparent from the context within which questions were asked.*") (emphasis added).

Appellants cite no authority to support their "limited offer" suggestion, but apparently rely on the underscored portion of appellate rule 33.1(a)(1)(A), as well as the italicized portion of evidence rule 103(a)(2), as excerpted above. We have examined the portion of the record to which appellants refer us and conclude it does not support appellants' claim.

**9.** *See* n. 8.

The excerpts from the pretrial hearing on which appellants and the dissenting opinion rely show only the trial court's general, but preliminary, reluctance to permit Dr. Blais to testify. The trial court had not ruled definitively at that preliminary juncture and, more importantly, had not yet read Dr. Blais's deposition. Moreover, the record does not reflect the capacity in which appellants were offering Dr. Blais, the substance of his testimony,[10] or his qualifications as an expert. Appellants acknowledged as much, once the trial court ruled to exclude Dr. Blais, by stating they would "really develop the Blais scenario" through proffer of his deposition.

The excerpts from the pretrial hearing on which appellants and the dissenting opinion rely do not, therefore, show a "ruling," as contemplated by rule 33.1(a)(1)(A) of the Rules of Appellate Procedure, or any "questions" that "were asked," as contemplated by rule 103(a)(2) of the Rules of Evidence. Because the substance of Dr. Blais's testimony was not "apparent from the context" and would not become apparent until appellants actually submitted his deposition testimony, we have no means to assess the harm, if any, arising from excluding that testimony. *See* Tex.R. Evid. 103(a)(2).

Finally, and most importantly, appellants may not invoke rule 33.1(a)(1)(A) as supporting their claim of preservation because they did not comply with rule of evidence 103(a)(1) by making a timely offer of proof, but instead deferred presenting Dr. Blais's deposition testimony until long after the trial court's plenary power over its judgment had expired. *See* Tex.R.App. P. 33.1(a)(1)(B) (requiring compliance with the rules of evidence).

The offer of proof serves primarily to enable the reviewing court to assess whether excluding the evidence was erroneous and, if so, whether the error was harmful. *See Ludlow v. DeBerry,* 959 S.W.2d 265, 270 (Tex.App.—Houston [14th Dist.] 1997, no pet.) (citing Goode, Wellborn & Sharlot, Guide to the Texas Rules of Evidence, § 103.3 at 21 (2d ed. 1993)). The offer of proof also allows the trial court to reconsider its ruling in light of the evidence contained in the bill. *Id.* Rule 103(b) reflects this secondary purpose by requiring that the offer be made before the charge is read to the jury, i.e., when the trial court is in a position to cure any error in excluding the proof. *See id.; see also* Tex.R. Civ. P. 270 ("[I]n a jury case no evidence on a controversial matter shall be received after the verdict of the jury."); *PGP Gas Prods., Inc. v. Fariss,* 620 S.W.2d 559, 560 (Tex.1981) (stating rationales underlying preservation-of-error requirement).

### 3. Rule 103 Not Obviated by Post–Plenary–Power Formal Bill

In claiming they preserved error, appellants rely principally, but mistakenly, on rule 33.2 of the Rules of Appellate Procedure, which authorizes post-judgment formal bills of exception. *See* Tex.R.App. P. 33.2(e)(1) ("In a civil case, a formal bill of exception must be filed no later than 30 days after the filing party's notice of appeal is filed."). Formal bills of exception serve to "complain on appeal about a matter *that would not otherwise appear in the record.*" Tex.R.App. P. 33.2. (emphasis added).

Appellants explain that they utilized the formal bill-of-exception procedure because Dr. Blais's deposition did not originally appear in the record. But this ignores that appellants caused the omission by not

---

**10.** For example, there was lengthy discussion over whether Dr. Blais could simply "narrate"; another possibility was to offer him as a "summary" witness.

offering Dr. Blais's deposition testimony under rule of evidence 103(b) in a timely offer of proof. If appellants had made their offer of proof, Dr. Blais's deposition testimony would "otherwise appear of record." Appellants cannot cure their error in not making an offer of proof of Dr. Blais's deposition testimony through their formal bill because the trial court could not cure, post-charge, post-verdict, and post-plenary power, the error, if any, in excluding that testimony. Although appellants filed their initial "formal bills" within 30 days of perfecting this appeal, the record reflects Dr. Blais's deposition testimony was not submitted as an attachment to these bills and was not presented to the court until over six months after the judgment was signed. Appellants did not comply, therefore, with the timing requirements of rule 33.2(e) in regard to the deposition testimony.

We conclude error, if any, was not preserved. We overrule appellants' second issue.

## Conclusion

We affirm the judgments of the trial court.

Justice MIRABAL dissenting.

MIRABAL, Justice, dissenting.

In issue two, appellants assert the trial court erred in excluding testimony from appellant's expert, Dr. Pierre Blais, regarding his "evaluation of the plaintiffs' explanted breast implants." The majority does not reach the merits of issue two. Rather, the majority holds that appellants have not preserved the issue for appellate review because they failed to make an offer of proof. I disagree.

The majority concludes that, in order to present this complaint for appellate review, appellants needed to file a "formal bill of exception" under Rule 33.2. TEX. R.APP. P. 33.2. However, rule 33.2 applies only when the matter complained about does "not otherwise appear in the record." *Id.* In the present case, appellants preserved error by an offer of proof under TEX.R.APP. P. 33.1(a) and TEX.R. EVID. 103(a), which read in relevant part as follows:

**Rule 33.1 Preservation; How Shown.**

(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of ... Evidence or ... Appellate Procedure.

TEX.R.APP. P. 33.1(a)(1).

**Rule 103. Rulings on Evidence.**

(a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . .

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

TEX.R. EVID. 103(a). In the present case, the substance of the testimony of Dr. Blais was made known to the trial court prior to the trial court's ruling excluding the evidence.

## 3M's Motion to Exclude the Testimony of Dr. Blais

3M filed a 40–page motion to exclude Dr. Blais's testimony. Attached to the motion are 34 exhibits primarily consisting of Dr. Blais's testimony in previous breast implant cases. In its "Preliminary Statement," the motion states as follows: "Plaintiffs have designated Pierre Blais, an organic chemist, to testify about his examination of the implants removed from plaintiffs ... matters regarding implant manufacture and composition ... and opinions that McGhan breast implants are defective." The exhibits attached to the motion provide details of Dr. Blais's background, education, and experience.

### Pretrial Hearing

The record from the pretrial hearing on 3M's motion to exclude Dr. Blais's testimony reads, in relevant part, as follows:

[THE COURT]: I have to admit that part of my opinion about Blais is colored by another *Daubert* motion that's been filed against him in the Norplant litigation.... But the arguments against Blais in Norplant were identical to his opinions here and it was not just causation, although you all aren't offering it for causation, just on material—biomaterial design. I don't think he's qualified to testify. So with that said, go ahead.

[PLAINTIFFS' COUNSEL]: Okay. What we would have Dr. Blais testify to—let me be very—I've got it down here. He's looked at the implants. In fact, he's, indeed, examined thousands of implants. He can give an opinion on whether the implant is—has failed, period....

....

[PLAINTIFFS' COUNSEL]: I want him to say, I've looked at the implants and what's the condition of them.

[THE COURT]: You talking about these three women?

[PLAINTIFFS' COUNSEL]: Yes. These three women, and show his background. I've looked at 2000. How much experience? What do you do? What do you find? Here's what I find, period.... What I'm saying is, no one is ever going to challenge Pierre Blais, I don't believe, that he can't look at an implant with his training and his disciplines. He can give an opinion whether or not it failed or not, period.

The trial court ultimately ruled that Dr. Blais's testimony would be excluded in its entirety.

### Analysis

From the record before us, it is clear that the substance of Dr. Blais's offered testimony was made known to the trial court. The purpose of an offer of proof is to present the substance of the testimony in order to assist both the trial court in ruling on the objection and the appellate court in reviewing the trial court's ruling. *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 278 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *see also Moosavi v. State*, 711 S.W.2d 53, 54 (Tex.Crim.App.1986).[1] An informal bill will suffice as an offer of proof when it includes a concise statement of the nature of the evidence being offered. *See Chance v. Chance*, 911 S.W.2d 40, 51–52 (Tex.App.—Beaumont 1995, writ denied); *Sims v. Brackett*, 885 S.W.2d 450, 453 (Tex.App.—Corpus Christi 1994, writ denied); *see also Love v. State*, 861 S.W.2d 899, 901 (Tex.Crim.App.1993). The law

---

**1.** The rules of evidence and appellate procedure applicable to this case apply equally to civil and criminal appeals.

does not require the offer of proof to show what *specific* facts the examination would reveal; rather, the appellant must clearly inform the trial court of the subject matter about which he wishes to examine the witness. *See Chance,* 911 S.W.2d at 51–52; *Sims,* 885 S.W.2d at 453; *see also Hoyos v. State,* 951 S.W.2d 503, 507 (Tex.App.— Houston [14th Dist.] 1997), *aff'd,* 982 S.W.2d 419 (Tex.Crim.App.1998). Appellants properly preserved their complaint about the exclusion of Dr. Blais's testimony, and we should reach the merits of their complaint on appeal.