**Opinion issued December 17, 2020**



In The

# Court of Appeals

### For The

# First District of Texas

_____

### NO. 01-19-00411-CV

_____

### ALFONSO MARTINEZ, Appellant

### V.

### LIDIA PLUMA, AS NEXT FRIEND OF A.C.V., A CHILD, Appellee

---

### On Appeal from the 334th District Court
### Harris County, Texas
### Trial Court Case No. 2016-09806

---

### DISSENTING OPINION

I respectfully dissent. In this case, a grand jury failed to indict appellant,

Alfonso Martinez, for the crime of indecent sexual contact with a seven-year-old

child, A.C.V. ("Anna").[1] The mother of the child, Lidia Pluma, arrived home late on the evening of the alleged assault after the child had been at home for several hours with her baby sister, her older sister Eunice, and her older sister's fiancé while Pluma was at work. Pluma saw that Anna was shaking and asked her what had happened. She testified that Anna told her Martinez had touched her private parts.

Pluma called the police, and they arrested Martinez that evening. A medical examination of Anna was conducted that evening and a physical and mental assessment of Anna was done the next day at the Children's Assessment Center (CAC). The Department of Family Protective Services (DFPS) investigated the alleged incident, as did the district attorney. A grand jury was convened and "no billed" Martinez, ending the criminal case against him. Pluma brought civil assault charges against Martinez on the basis of his alleged indecent sexual contact with Anna, and the case was tried to a jury five years after the alleged occurrence. The jury awarded $300,000 in noneconomic damages to the child, solely on the basis of the child's, her mother's, and her older sister's testimony, which was contested by Martinez's witnesses.

Neither Anna nor Pluma was disclosed as a witness in response to Martinez's disclosure request, and Pluma did not disclose any documents related to the

---

[1] In this opinion, I refer to the minor child using the same pseudonym that the majority opinion uses.

occurrence or statement that was the subject of their testimony in response to a request for discovery alluded to in the record. The medical assessment of Anna's alleged physical injuries, the assessment of the facts and Anna's physical and mental state by the CAC, any reports from the DFPS investigation, or any ongoing therapy or other treatment related to the alleged occurrence were not disclosed by Pluma or introduced into evidence. No witnesses for Pluma with knowledge of the occurrence testified other than Anna, Pluma, and Anna's sister. Martinez's witnesses testified that Martinez did not touch Anna inappropriately. The majority affirms the judgment in favor of the plaintiff. I would not.

I would hold that Pluma's damage claims are supported by no more than a scintilla of evidence and that the evidence was, therefore, legally insufficient to support the award of damages. I would further hold that the trial court clearly erred in permitting the testimony of Pluma—an undisclosed surprise outcry witness[2]—and that the error probably caused the rendition of an improper judgment.

---

[2] An outcry witness is the first adult to whom a child sexual assault victim makes a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(1)–(3); *Sanchez v. State*, 354 S.W.3d 476, 479 n.1 (Tex. Crim. App. 2011). Pluma avoided having to comply with the statute—which provides an exception to the hearsay rule for certain statements by child victims of sexual assault and also provides procedural protections both for defendants and for child victims in sexual assault cases—by bringing her sexual assault of a child case as a civil assault case that factually alleged child sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b).

3

I believe the majority opinion not only is wrong on the law but has the consequence of inviting false charges of sexual assault in civil tort in every future case in which a disgruntled child or adult is unable to obtain the indictment of an alleged sexual predator for lack of evidence. Accordingly, I respectfully dissent. I would reverse the judgment of the trial court and render judgment that Pluma take nothing by her claims.

**Standard of Review**

Evidence is legally insufficient to support a jury finding when (1) the record discloses the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 841 (Tex. 2018) (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018)). We consider all of the evidence in the light most favorable to the finding, and we indulge every reasonable inference in favor of the finding. *Id.* at 841–42 (quoting *Gunn*, 554 S.W.3d at 658). If the evidence offered to prove the existence of a vital fact is "so weak as to do no more than create a mere surmise or suspicion," the record contains less than a scintilla of evidence. *Id.* at 842 (quoting *Gunn*, 554 S.W.3d at 658). The record contains more than a scintilla of evidence when the evidence "rises to a level that would enable

4

reasonable and fair-minded people to differ in their conclusions." *Gunn*, 554 S.W.3d at 658 (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam).

## Compensatory Damages

In his first issue, Martinez argues that "the evidence is legally insufficient to support the damages award." He then argues that "since [Pluma] did not present any evidence of physical injuries, the noneconomic damage award was . . . based on emotional injury alone, which the Texas Supreme Court identifies as 'mental anguish' damages" and that Pluma presented legally insufficient proof of such damages. *See Hancock v. Variyam*, 400 S.W.3d 59, 63 n.4 (Tex. 2013) (identifying mental anguish damages as "noneconomic in nature"). I agree.

### A.     Physical Injury Damages

The majority recasts and, in my view, misapprehends this issue. It claims that the broad-form jury question on damages improperly commingled damages for physical and emotional injury and that Martinez "argues there is legally insufficient evidence of one type of damages without also challenging the sufficiency of the

5

evidence of another available type of damages," thereby "waiv[ing] his challenge" and relieving this Court of the duty to "evaluate whether the evidence supports the single element [Martinez] isolated and chose to challenge." Slip Op. at 8. It then opines that Martinez "only challenges the legal sufficiency of the evidence on mental anguish damages, an element of damages the jury did not separately award," and, accordingly, it holds that Martinez "has waived appellate review of his sufficiency challenge to compensatory damages." *Id.* The majority then adds a long footnote accusing Martinez of wanting to "have this Court assume the jury rejected the possibility that Anna experienced pain to constitute an injury"—a conjecture that is purely the majority's own, not Martinez's—and declares that "[t]o do so would be inconsistent with the standard of review we must apply," because when "reviewing an appeal of a jury's verdict, we assume findings consistent with the verdict, not against it." *Id.* at 9 n.4. This argument is misplaced.

Pluma expressly sought damages under Civil Practice and Remedies Code section 41.001, which provides for recovery of damages for both "physical pain and suffering" and "mental or emotional pain or anguish." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(12) (providing that "Noneconomic damages" means "damages awarded for the purpose of compensating a claimant for *physical pain and suffering*, *mental or emotional pain or anguish*, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment

6

of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages") (emphasis added). And, in his brief on appeal, Martinez argues that Pluma's "petition explicitly sought unliquidated damages for *physical and emotional injuries* and damages as a result of [his] conduct . . . [,] which is governed by [Civil Practice and Remedies Code section] 41.001, which includes physical and emotional injuries." Thus, the broad-form jury question on damages was entirely proper, and Martinez's claim on appeal that Pluma proved neither physical injury nor mental anguish damages is likewise entirely proper. Moreover, Martinez is correct on the law and the facts of this case.

In my view, the opinion has both the facts and the law backwards. The *burden* to produce evidence of physical injury to sustain the verdict against a no-evidence claim was on Pluma, not Martinez. *See Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating that, to establish prima facie claim for civil assault, plaintiff must establish same elements required for criminal assault). And the mere *assumption* that Anna suffered injury from Martinez's alleged actions is the majority's, not Martinez's. The majority fails to cite to any evidence of physical injury that supports the jury's damages award against Martinez in response to Martinez's no evidence challenge. Instead, it opines that the jury could simply "infer" injury from what Anna alleged Martinez had done without any further proof other than Anna's account of what happened on the day of the occurrence and

the testimony of Pluma regarding what Anna had told her about the occurrence. Slip Op. at 9 n.4. That is incorrect. As Martinez argues, there is no evidence of any physical injury to Anna by the act of indecency with a child attributed to Martinez.

Pluma's failure to produce any evidence of physical injury to Anna is itself probative. When a complaint of any kind of sexual assault of a child is made and the alleged perpetrator is arrested—as the undisputed facts show occurred here—a police report is made and the child is taken not only to the hospital for a medical examination but also to the Children's Assessment Center for a forensic interview and a professional assessment of both mental and physical injury to that child. And indeed the evidence here shows that that procedure was followed in this case and that DFPS likewise conducted an investigation into the facts and the effects of the alleged indecent sexual contact on Anna. Also, a grand jury was convened and likewise investigated Anna's claim, following which the grand jury "no billed" Martinez and the criminal case against him was dropped. That means there was a great deal of evidence from which it could have been determined whether Pluma's claim of Martinez's sexual indecency with her daughter and the alleged physical and mental harm it caused Anna was substantiated by evidence or not. Yet none of it made it into the record.

As it was Pluma's burden to produce evidence to support her claim of physical injury to Anna, it can only be inferred that there was no such evidence. As none was

8

produced, the evidence is legally insufficient to support Pluma's claim for physical injury made on Anna's behalf, just as Martinez asserts. *See JBS Carriers, Inc.*, 564 S.W. 3d at 841–42.

## B.      Mental Anguish Damages

The record is likewise silent as to any mental anguish injuries reported by Anna to a professional social worker or therapist at the time or later, regarding either what happened to her or how she felt about what happened. Nor is there even a scintilla of evidence as to any ongoing mental or behavioral problems or therapy provided to Anna to allow her to cope with the alleged assault—although all of this evidence is admissible in any sexual assault proceeding as an exception to the hearsay rule, and it is routinely admitted to prove that the defendant actually committed a culpable act that resulted in mental or physical injury to the complainant. *See* TEX. R. EVID. 803(3) (providing exception to hearsay rule for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)"), (4) (providing exception to hearsay rule for "[a] statement that is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause"). These safeguards are built into the law of sexual assault precisely because of the unreliability of the testimony of a child and society's need

to protect both the child victims of sexual assault and those unjustly accused of this crime. Additionally, no party in this case conducted any depositions to ascertain the stories of any of the witnesses and to test their veracity at trial, so there is no deposition testimony regarding the effects of the alleged assault on Anna physically, mentally, or emotionally.

To uphold an award of mental anguish damages on a legal sufficiency review, the record must contain "*direct evidence of the nature, duration, and severity* of [the plaintiff's] mental anguish, thus establishing a *substantial disruption* in the plaintiff's daily routine," or "evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Anderson v. Durant*, 550 S.W.3d 605, 618–19 (Tex. 2018) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)) (emphasis added). Conversely, "[g]eneralized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages." *Id.* at 619 (quoting *Serv. Corp. Int'l v. Guerra*, 343 S.W.3d 221, 232 (Tex. 2011)).

There was no such evidence here. All there is in this case is the child's testimony as to what happened to her, Eunice Pluma's testimony concerning Anna's behavior when Eunice picked her up from Martinez's house,[3] Pluma's testimony

---

[3] Eunice Pluma also testified, without objection, concerning Pluma's reaction to Anna's outcry. Eunice testified that she was asleep when Pluma "rushed into [her] bedroom screaming that [Martinez] had touched [Anna] inappropriately." Eunice

that, on the evening of the assault, Anna was shaking and seemed bothered by something, prompting Pluma to find out what had happened, Anna's outcry to Pluma, Pluma's report to the police, Martinez's arrest, and Anna's being taken to the hospital for a medical exam. Period. *See* Slip. Op. at 2–4. And neither Pluma nor Anna was disclosed as a witness so that they could be deposed.

There is absolutely no evidence in the record regarding the results of that medical exam. Nor is there any other evidence of mental anguish or pain and suffering as a result of what Anna claimed to have suffered or of any ongoing medical treatment, either physical or emotional, required as a result of what Anna claimed happened to her. This is far below the standard of proof of damages for mental anguish. *See Anderson*, 550 S.W.3d at 619 ("[G]eneralized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages.").

I would sustain Martinez's first issue, and I would hold that Pluma failed to produce more than a scintilla of evidence of either physical or mental anguish

---

stated that Pluma "started panicking, screaming," that she was "hysterical," and that she "was hitting herself, she was blaming herself for not answering her cell phone" when Anna had called Pluma earlier that day. Eunice also testified that, after Anna spoke with a police officer, the officer "told us, your sister said Mr. Martinez touched her inappropriately and he kissed her."

11

damages.[4] Accordingly, I would hold that the evidence of damages was legally insufficient and that the damages award should be reversed and a take-nothing judgment rendered against Pluma.

## Trial Court's Ruling Permitting Pluma to Testify

In his second issue, Martinez argues that the trial court erred by allowing Pluma, Anna's mother and the outcry witness, to testify over his objection that she was a non-party witness who was not disclosed in response to his requests for disclosure until two days before trial, surprising and severely prejudicing him. The majority opines that Martinez failed to preserve error and that, "[e]ven if appropriate record citations supported [Martinez's] argument, we would conclude the trial court did not err" because Pluma was a "named party." Slip Op. at 11–12. The majority confesses to having no support for its claim that a person suing in a representative capacity for injury to another is a named party, *id.* at 12, nor am I aware of any. And it further opines that, "[e]ven if the trial court erred by allowing [Pluma] to testify, we would hold that such error was harmless" as Pluma's testimony was

---

[4]     Although Martinez does not challenge on appeal the jury's finding that he sexually assaulted Anna, I note that the jury charge in this case required Pluma to prove that Martinez touched Anna's genitals with the intent to arouse or gratify his sexual desire or that of another person. There is no evidence that he did so, other than the contested testimony of Anna, made five years after the alleged assault, which is corroborated only by the hearsay testimony of Pluma, a surprise outcry witness at trial.

12

"cumulative" rather than "crucial to a key issue," which would have made the error harmful. *Id.* at 13–15. Again, I disagree for the reasons set forth below.

### A.    Preservation of Error

The majority claims that Martinez did not object at trial that Pluma was not disclosed as a witness in response to his requests for disclosure under Texas Rule of Civil Procedure 194.2. Therefore, it holds that he did not preserve this complaint under Texas Rule of Appellate Procedure 33.1. Slip Op. at 11; *see* TEX. R. APP. P. 33.1(a) (requiring, for preservation of error, complaint to be made to trial court by timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"). This claim is contrary to the record.

The record reflects that Martinez's counsel expressly "object[ed] to [Pluma] calling any witnesses that were not disclosed in their trial witness list" prior to trial. He specifically objected, "The only witness that was listed by [Pluma] in their trial witness list was the sister [Eunice Pluma]. . . . The child was not listed, the mother was not listed on the trial witness list. It was the five witnesses that I listed, and the child's sister." Martinez's counsel further argued:

> There was discovery. There was interrogatories, production, and disclosures. And in the initial disclosures, the child was not listed. I think it was in the supplemental disclosure she was listed as a person with knowledge; but when I received the witness list on Friday

13

afternoon, Judge, neither the child nor the mother were listed as to be testifying at trial here.

The trial court noted that counsel had stated, during voir dire and his opening statement, that Anna had made more than one statement, "[s]o you've obviously discovered this. You're not going to be prejudiced as if you don't know what she's going to say." Martinez's counsel persevered, however, replying that his objection was not that he did not have the statements but that he obtained them "not through the discovery that was supplied by [Pluma] in this matter" but "through our own efforts . . . because they refused to release them to us. . . . We got them through our own efforts of discovery, as opposed to them supplying us with copies of the records." The trial court overruled Martinez's objection and allowed Pluma to testify.

I disagree with the majority's claim that error in the admission of Pluma's testimony was not preserved. Martinez properly objected both to Pluma's testifying as an undisclosed witness and to her failure to disclose records supporting her claims, and the trial ruled on his objection and allowed Pluma to testify. Martinez makes the same objection to this testimony in this appeal that he made at trial. I turn, therefore, to the question whether the trial court erred in allowing the testimony and, if so, whether the error was harmful.

14

## B. Admission of Pluma's Testimony

A request for disclosure requires, with respect to fact witnesses, that the disclosing party identify individuals having knowledge of relevant facts and provide "a brief statement of each identified person's connection with the case." TEX. R. CIV. P. 194.2(e). In a suit "alleging physical or mental injury and damages from the occurrence that is the subject of the case," the requesting party may seek "all medical records and bills that are reasonably related to the injuries or damages asserted" or authorization permitting their disclosure. TEX. R. CIV. P. 194.2(j). A written response is required, and "[c]opies of documents and other tangible items ordinarily must be served with the response," unless they are voluminous, in which case other arrangements for production may be made. TEX. R. CIV. P. 194.3, 194.4.

Under Rule of Civil Procedure 193.6, a party who fails to make, amend, or supplement a discovery response in a timely manner may not:

> offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a)(1)–(2); *see also Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) (per curiam). The remedy imposed by Rule 193.6 is mandatory unless the trial court finds that an exception applies.

15

*Norfolk S. Ry. Co. v. Bailey*, 92 S.W.3d 577, 581 (Tex. App.—Austin 2002, no pet.) (citing *Morrow v. H.E.B., Inc*., 714 S.W.2d 297, 297–98 (Tex. 1986) (per curiam)). "The purpose behind [Rule 193.6] is to prevent trial by ambush." *Harris Cty. v. Inter Nos, Ltd*., 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The party seeking to introduce the evidence or call the witness has the burden of establishing good cause or lack of unfair surprise or prejudice. TEX. R. CIV. P. 193.6(b)–(c); *Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The trial court has discretion in determining whether this burden has been met, but "[a] finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record." TEX. R. CIV. P. 193.6(b); *see Dyer*, 333 S.W.3d at 717.

An appellate court will reverse a judgment based upon an erroneous evidentiary ruling if the ruling probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012); *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008); *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 144 (Tex. 2004). "A reviewing court must evaluate the whole case from voir dire to closing argument, considering the 'state of the evidence, the strength and weakness of the case, and the verdict.'" *Reliance Steel & Aluminum,* 267 S.W.3d at 871 (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 841 (Tex. 1979)).

The only witness Pluma listed in her trial witness list was Anna's older sister, Eunice Pluma. Pluma herself and Anna were not listed as witnesses, as Pluma's counsel admitted on the record, yet both were called—and allowed—to testify. Anna, on whose behalf the suit was brought, was a named party and therefore allowed to testify, as her counsel pointed out in response to Martinez's objection at trial. However, Pluma was not herself a party but Anna's "next friend," and therefore she was not allowed to testify without proper disclosure. And here the disclosures that were not made—indeed that Pluma "refused" to make—were not merely valuable witness statements but records material to the damages suffered. Thus, although neither Anna nor her mother was identified as a witness in response to Martinez's requests for disclosure, both Anna and Pluma were able to appear and testify at trial without having disclosed the evidence necessary to corroborate (or undermine) their claims. They were not required to disclose the medical records from the physical examination of Anna conducted on the evening of the alleged occurrence, the CAC assessment of Anna's physical and emotional state at the time of the alleged indecent sexual contact, or the documents related to the DFPS investigation initiated in response to Pluma's report to the police. Yet, in this suit "alleging physical or mental injury and damages from the occurrence that is the subject of the case," Martinez was entitled to disclosure of "all medical records and

17

bills that are reasonably related to the injuries or damages asserted" or authorization permitting their disclosure. TEX. R. CIV. P. 194.2(j).

The trial court's error in admitting Pluma's testimony is particularly harmful because Pluma essentially testified as an outcry witness. In criminal cases involving sexual assault of a child and in suits affecting the parent-child relationship (SAPCRs), the outcry statute permits the first adult to whom the child complainant made a statement about the offense to testify regarding the content of the statement.[5] *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). "The outcry statute creates a hearsay exception for a child-complainant's out-of-court 'statements' that 'describe the alleged offense,' so long as those statements were made 'to the first

---

[5]     Texas Family Code section 104.006 creates an exception to the hearsay rule in suits affecting the parent-child relationship for statements made by a child twelve years old or younger that describe alleged abuse if, in a hearing outside the presence of the jury, the trial court finds that "the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability" and the child testifies, is available to testify, or the court determines that the use of statement in lieu of the child's testimony is necessary to protect the child's welfare. *See* TEX. FAM. CODE ANN. § 104.006; *In re R.H.W.*, 542 S.W.3d 724, 735 n.2 (Tex. App.— Houston [14th Dist.] 2018, no pet.) (discussing differences between hearsay exception contained in Family Code and outcry statute in Code of Criminal Procedure); *In re M.R.*, 243 S.W.3d 807, 813 (Tex. App.—Fort Worth 2007, no pet.) (describing, in termination of parental rights case, Family Code section 104.006 as "civil analogue" of article 38.072); *see also* TEX. FAM. CODE ANN. § 54.031 (creating similar exception to hearsay rule for proceedings under Juvenile Justice Code when juvenile is charged with certain sexual offenses against child victim). None of these protections for the parties to criminal cases involving sexual assault of a child and SAPCRs were accorded in this simple tort suit for damages.

[adult] person . . . to whom the child . . . made a statement about the offense.'" *See id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(1)–(3)).

Subsection 2(b) of article 38.072 then "establishes additional procedural requirements, including that the party intending to offer the statement provide the adverse party with a 'written summary of the statement' and the 'name of the witness through whom it intends to offer the statement.'" *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)). Moreover, the statute "limits the form of [outcry] evidence to testimony from a witness." *Id.* at 586. Thus, in a SAPCR or a criminal sexual assault case, had Pluma not been testifying as an outcry witness, her testimony as to what Anna told her about the alleged incident of indecent sexual contact would have been inadmissible hearsay. And without her testimony, the *only* evidence in support of Pluma's tort claim of indecent sexual contact with a child would have been Anna's testimony uncorroborated by any other testimony or other form of evidence.

Only Pluma could have corroborated Anna's account of the alleged assault through Anna's out-of-court statement to her about the occurrence. Moreover, had Pluma been required to be listed as an outcry witness in a criminal case, Martinez would have been entitled to a written summary of her anticipated testimony prior to trial so that he could prepare his case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1). Notably, as our sister court has observed, "when there are no other

19

corroborating witnesses and the outcry witness is the mother of the victim and the outcry statement is detailed, it is difficult to say that the jury would not place great weight on the outcry witness's testimony." *Davidson v. State*, 80 S.W.3d 132, 138 (Tex. App.—Texarkana 2002, pet. ref'd).

Here, Pluma testified, in the absence of all statutory safeguards, that Anna was "shaken" when she returned home in the evening and told her mother "not to touch her." She also testified at length as to her own violent reaction—screaming and hitting herself against the wall. Given the inflammatory nature of Pluma's testimony and the fact that she alone corroborated Anna's account of the act of indecent sexual contact with a child allegedly committed by Martinez, as well as the contrary testimony of Martinez's witnesses, Pluma's counsel's failure to list her as a trial witness and refusal to disclose records, combined with the total lack of corroboration of Pluma's liability and damage claims from other sources of direct evidence—and given the fact that this case was brought as a garden-variety tort case without any of the safeguards associated with a criminal case involving indecency with a child or a SAPCR—it is indeed "difficult to say that the jury would not place great weight on the outcry witness's testimony" in deciding to render an award of $300,000 in damages against Martinez. *See id.* And it is even more difficult to say that Pluma's testimony did *not* probably cause the rendition of an improper judgment, resulting

in reversible error. *See U–Haul Int'l*, 380 S.W.3d at 136. I would conclude that it did.

I can only conclude that the trial court abused its discretion by allowing the crucial testimony of Lidia Pluma, the outcry witness, corroborating her daughter's account of Martinez's conduct towards Anna and the physical and mental harm that his conduct allegedly caused to Anna. Given that testimony and all that is missing from the record of this case—starting but not ending with Pluma's failure to disclose material witnesses and documents—I can only interpret the trial in this case as trial by ambush. *See Inter Nos*, 199 S.W.3d at 367 (stating that purpose behind Rule 193.6 is to prevent trial by ambush).

I would sustain Martinez's second issue. I would hold that the trial court abused its discretion by acting without any guiding rules or principles and that the result of its evidentiary decisions probably caused rendition of an improper judgment, requiring reversal. *See Whirlpool Corp.*, 298 S.W.3d at 638.[6]

---

[6] In his third issue, Martinez argues that the judgment of the trial court should be reversed because Pluma's counsel introduced overwhelmingly prejudicial improper jury argument. Because I would conclude that the trial court erred both by entering judgment on evidence legally insufficient to support the judgment for damages and by permitting the testimony of Lidia Pluma, Anna's mother and an undisclosed witness, and that both errors separately caused the trial court to enter an improper judgment, I would not reach Martinez's third issue.

21

## Conclusion

I would hold that the evidence is legally insufficient to support Pluma's claim for damages for either physical injury or pain and suffering or mental anguish. And I would further hold that the trial court erred in permitting Lidia Pluma to testify as an unlisted trial witness and without the disclosure of written statements and records material to her damage claims. Accordingly, I would reverse the judgment of the trial court and render judgment that Pluma take nothing by her claims.

Evelyn V. Keyes
Justice

Panel consists of Justice Keyes, Kelly and Landau.

Justice Keyes, dissenting.